IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| A.M-G., who sues through her parent, P.G., | Case No. 6:24-cv-01517-MC |
| Plaintiffs, | OPINION AND ORDER |
| v. | |
| SALEM KEIZER PUBLIC SCHOOLS and WILLAMETTE EDUCATIONAL SERVICE DISTRICT, | |
| Defendants. | |

| | |
|---|---|
| K.B., who sues through her parents, A.B. and C.B., | |
| | Case No. 6:24-cv-01575-MK |
| Plaintiffs, | OPINION AND ORDER |
| v. | |
| SALEM KEIZER PUBLIC SCHOOLS and WILLAMETTE EDUCATIONAL SERVICE DISTRICT, | |
| Defendants. | |

1 – OPINION AND ORDER

MCSHANE, Judge:

Plaintiffs A.M-G. and K.B. are Deaf students who attend school in Defendant Salem Keizer Public School District ("SKPS"). They bring this action through their parents. Until its closure, Plaintiff students attended the regional Deaf/Hard of Hearing ("D/HH") Center Site Program run by Defendant Willamette Educational Service District ("WESD") and housed at Crossler Middle School. Following WESD's decision to close the program, Plaintiffs filed due process hearing requests, arguing that the closure is a change in placement and denies Plaintiff students access to a free appropriate public education. They also invoked the stay put provision of the Individuals with Disabilities in Education Act ("IDEA"). Plaintiffs ask this Court to order Defendants to reopen the D/HH program, reinstate Plaintiff students, and maintain the program during the pendency of litigation. Because Plaintiffs have not shown a change in students' placement, Plaintiffs' motions for a temporary restraining order and preliminary injunction (Case No. 6:24-cv-1517-MC, ECF No. 2 and Care No. 6:24-cv-01575-MK, ECF No. 2) are DENIED.

## BACKGROUND

Plaintiff A.M-G. is a student in the SKPS district. Plaintiff P.G. is her parent and legal guardian. A.M-G. is Deaf and her primary mode of communication is American Sign Language ("ASL"). A.M-G. Compl. ¶ 1.2, ECF No. 1.[1] A.M-G. also has cochlear implants that she uses primarily for environmental sounds. A.M-G. Compl. ¶ 3.3. A.M-G. has attended the D/HH Center Site Program since preschool, most recently completing eighth grade at Crossler Middle School. A.M-G. Compl. ¶¶ 3.4, 3.15. While in the D/HH program, A.M-G. relied on the Teacher

---

[1] Unless otherwise specified, ECF Nos. in this Opinion & Order refer to the corresponding docket numbers in case 6:24-cv-1517-MC.

2 – OPINION AND ORDER

of the Deaf for supplemental instruction. P.G. Decl. ¶ 4, ECF No. 4. She also relied on the Deaf peers in her class for information. P.G. Decl. ¶ 5.

Plaintiff K.B. is also a student in the SKPS district. Plaintiffs A.B. and C.B. are her parents and legal guardians. K.B. Compl. ¶ 1.1, 6:24-cv-01575-MK, ECF No. 1. K.B. is Deaf and relies on hearing aids, transcription services, and ASL for communication. K.B. Compl. ¶ 1.2. K.B. has also attended the D/HH Center Site Program since preschool, completing eighth grade at Crossler Middle School this past year. K.B. Compl. ¶¶ 3.4, 3.15. While attending the D/HH program, K.B. relied on her deaf peers and the Teacher of the Deaf to supplement the communication she received at school. K.B. Compl. ¶ 3.7. K.B. also relied on the ASL interpreters available for her Deaf peers, especially when her technology was not working. K.B. Compl. ¶ 3.4.

Defendant Salem Keizer Public Schools and Defendant Willamette Educational Service District have an inter-district agreement for WESD to provide services for Deaf/Hard of Hearing ("D/HH") students. *See generally* A.M-G. Moritz Decl. Ex. B, ECF No. 3. Until the end of the 2023-2024 school year, WESD ran a Regional D/HH Center Site program. *Id.* This program was housed at Salem Heights Elementary School, Crossler Middle School, and Sprague High School. *Id.* Deaf students could opt to receive their education at these schools, giving them access to centralized support services and a cohort of Deaf peers. A.M-G. Compl. ¶¶ 3.2, 3.5.

On March 21, 2024, Plaintiffs received a letter from WESD informing them "that the Crossler and Sprague Regional Deaf/Hard of Hearing Programs will be closing at the end of the 2023-2024 school year." A.M-G. Moritz Decl. Ex. C, ECF No. 3. WESD elaborated, "at this time we will be returning to providing D/HH services in the neighborhood setting." *Id.* "Services

within the IEP will remain in place, regardless of school attendance." *Id.* WESD noted that the decision was made "after extensive deliberation and analysis of current best educational practices, regional districts' needs and interest in the programs, and student educational and developmental needs." *Id.* Although the D/HH program was closing, the letter clarified that students enrolled at Crossler could continue there through eighth grade, unless they chose to return to their neighborhood school. *Id.* The letter also indicated that students wishing to attend Sprague High School, even if it was not their neighborhood school, could request a transfer. *Id.*

After receiving this letter, Plaintiffs filed requests for due process hearings with the Oregon Department of Education, challenging the termination of the regional D/HH program. A.M-G. Moritz Decl. Ex. E at 1, ECF No. 3; K.B. Moritz Decl. Ex. E at 1, 6:24-cv-01575-MK ECF No. 3. In July 2024, they also filed Motions for Stay-Put. *Id.* at 2. On August 9, 2024, an Administrative Law Judge denied Plaintiffs' motions for stay put. *Id.* at 16. The ALJ also dismissed the due process complaints on ripeness grounds, finding that Plaintiffs "assert[ed] only allegations related to anticipated future harm in the 2024-20235 school year." *Id.* at 15–16. This appeal followed.

## DISCUSSION

The purpose of the Individuals with Disabilities Education Act ("IDEA") is "to ensure that all children with disabilities have available to them a free appropriate public education ["FAPE"]." 20 U.S.C. § 1400(d)(1)(A). The primary mechanism to achieve that is a student's individualized education program, or IEP. The IEP spells out the specially designed instruction, services, and accommodations necessary for the individual child to meet their goals. 20 U.S.C. § 1414(d)(1)(A)(i)(IV); 34 C.F.R. § 300.320.

The IDEA provides for several procedural safeguards, including, as relevant here, "An opportunity for any party to present a complaint with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child." 20 U.S.C. § 1415(b)(6)(A).

The IDEA also provides that "during the pendency of any proceedings conducted pursuant to this section . . . the child shall remain in the then-current educational placement of the child." 20 U.S.C. § 1415(j). This is known as the IDEA's stay put provision. "Stay put functions as 'an "automatic" preliminary injunction,' and the moving party need not show the traditionally required preliminary injunction factors to obtain relief." *S.C. by K.G. v. Lincoln County School District*, 16 F.4th 587, 589 (9th Cir. 2021). Stay put was implemented to prevent schools from unilaterally excluding disabled children from school. *Honig v. Doe*, 484 U.S. 305, 328 (1988).

Because Plaintiffs have brought a due process claim under 20 U.S.C. § 1415, they may invoke the stay put provision. At issue is determining what Plaintiffs' "then-current educational placement" is and whether there has been a chance in placement.

The IDEA does not define "current educational placement." *N.D. ex rel. parents acting as guardians ad litem v. Hawaii Dep't of Educ.*, 600 F.3d 1104, 1114 (9th Cir. 2010). However, the Ninth Circuit has held "that 'educational placement' means the general educational program of the student. More specifically we conclude that under the IDEA a change in educational placement relates to whether the student is moved from one type of program—i.e., regular class—to another type—i.e., home instruction." *Id.* at 1116. A child's "then-current" placement is "the placement set forth in the child's last implemented IEP." *N.E. by & through C.E. & P.E.*

5 – OPINION AND ORDER

*v. Seattle Sch. Dist.*, 842 F.3d 1093, 1096 (9th Cir. 2016) (quoting *K.D. ex rel. C.L. v. Dep't of Educ., Hawaii*, 665 F.3d 1110, 1117–18 (9th Cir. 2011). "The purpose of an IEP is to embody the services and educational placement or placements that are planned for the child." *Id.* Therefore, the Court looks to the students' IEPs and associated placement paperwork to determine if there has been a change in placement.

In June 2022,[2] A.M-G.'s "Special Education Placement Determination" was "Access to special education in, or outside of the general education setting for up to 20% of the school day." A.M-G. Moritz Decl. Ex. A at 2, ECF No. 3. Namely, this placement was "Crossler Center Site for D/HH Students – 1 Class in Special Education Classroom: Study Skills." *Id.* In May 2024, A.M-G.'s "Special Education Placement Determination" was also "Access to special education in, or outside of the general education setting for up to 20% of the school day." A.M-G. Polay Decl. Ex. 1 at 2, ECF No. 11. Namely, this placement was "Foundations class at the high school. Offering academic supports and study skills." *Id.* A.M-G.'s education remains primarily in the general education classroom, or the same option on the continuum of placement options.

In November 2023, K.B.'s "Special Education Placement Determination" was "Access to special education in, or outside of the general education setting for up to 20% of the school day." K.B. Polay Decl. Ex. 1 at 2, 6:24-cv-01575-MK ECF No. 14-1. Namely, this placement was an "Advisory class 20 minutes a day, 4 days a week." *Id.* In June 2024, K.B.'s "Special education Placement Determination" was also "Access to special education in, or outside of the general education setting for up to 20% of the school day." K.B. Polay Decl. Ex. 4 at 2, 6:24-cv-01575-

---

[2] A.M-G.'s 2023 placement paperwork has not been submitted to the Court. Plaintiffs allege, and Defendants do not dispute, that the only change between 2022 and 2023 in the Placement Determination form was that it did not specifically name Crossler. Pls.' Compl. ¶ 3.11, ECF No. 1.

MK ECF No. 14-1. Here, the determination noted that as Sprague High School runs a block schedule, K.B. would "be removed for one class period . . . for a Study Skills tutorial class." *Id.* K.B.'s education likewise remains primarily in the general education classroom, or the same option on the continuum of placement options.

A.M-G.'s 2023 and 2024 IEPs[3] are substantially similar, with only a few notable differences. *Compare* A.M-G. Moritz Decl. Ex. G *with* A.M-G. Moritz Decl. Ex. H, ECF No. 3. In the 2023 IEP, A.M-G. was to receive 60 minutes a week of specially designed instruction in written language and 90 minutes a week of specially designed instruction in reading and language arts. These are not present in the 2024 IEP. Related services in the 2023 IEP include 60 minutes a month for speech/language services, but only 50 minutes a month in the 2024 IEP. The required accommodations are all the same from the 2023 to 2024 IEP, with some minor differences in time allotted.

K.B.'s 2023 IEP was amended in June 2024. *See* K.B. Moritz Decl. Exs. G and H, 6:24-cv-11575-MK ECF No. 3. There were no changes in specially designed instruction or related services.[4] Several accommodations were added to accommodate K.B.'s scoliosis as she transitioned to high school. A full-time ASL interpreter was also added as an accommodation. K.B.'s amended IEP provides more accommodations and support.

---

[3] Defendants assert that A.M-G.'s "most recently implemented IEP" is the May 2024 IEP. Def. SKPS Resp. 4, ECF No. 10. It is clear to the Court that Plaintiffs are challenging the May 2024 IEP and Placement Determination. For this analysis, therefore, the Court assumes that the 2023 IEP is A.M-G.'s "last implemented IEP."

[4] Plaintiffs assert that some of K.B.'s specially designed instruction "will be delivered by a special education teacher with no background in deaf education, rather than a D/HH specialist." K.B. Pls.' Mot. TRO 13. In reviewing the record, the Court sees no such change. K.B.'s 2023 IEP provides for 30 minutes a week each of specially designed instruction in organization and self-advocacy, provided by the D/HH specialist. The amended IEP makes no changes in amount, frequency, or provider of K.B.'s specially designed instruction. The 2023 IEP provided for removal from the regular classroom for 30 minutes a month for self-advocacy specially designed instruction. Likewise, the amended IEP provides for 30 minutes a month with the teacher of the deaf for self-advocacy and transition skills. *Compare* K.B. Moritz Decl. Ex. G *with* K.B. Moritz Decl. Ex. H.

7 – OPINION AND ORDER

Comparing the placement paperwork and the 2023 and 2024 IEPs, the Court finds there has been no change in current educational placement, so there is no need for a stay put order.

Plaintiffs cite Letter to Fisher, a 1994 Policy letter from the Office of Special education Programs (OSEP), noting the three components of an educational placement – "the education program set out in the student's IEP, the option on the continuum [of alternative placements] in which the student's IEP is to be implemented, and the school or facility selected to implement the student's IEP." Pls.' Mot. TRO 12 (*citing* Letter to Fisher, 21 IDELR 992 (OSEP 1994)). This policy letter does lay out four factors to consider when determining if there has been a change in educational placement: "whether the educational program set out in the child's IEP has been revised; whether the child will be able to be educated with nondisabled children to the same extent; whether the child will have the same opportunities to participate in nonacademic and extracurricular services; and whether the new placement option is the same option on the continuum of alternative placements."[5] Letter to Fisher, 21 IDELR 992 (OSEP 1994). While the Ninth Circuit has never adopted these factors, several district courts around the country have applied these factors in suits challenging an ALJ's denial of a stay put motion. *See, e.g., R.M. v. Gilbert Unified School District*, 2017 WL 3225189 (D. Ariz. Jul. 31, 2017).

Applying the Fisher factors here leads the Court to the same conclusion. As noted above, Plaintiffs' IEPs remain substantially the same. Plaintiffs will be educated with nondisabled students to the same extent. There is no indication or allegation that Plaintiffs will not have the same opportunity to participate in extracurriculars. And again, as noted above, Plaintiffs will

---

[5] The continuum of placement options, from least restrictive to most restrictive, includes the general education classroom, the special education classroom, a special school, homebound education, and a hospital or residential facility. Or. Admin. R. 581-015-2245.

continue to spend at least 80% of their days in the general education classroom, the same option on the continuum of placements. There has been no change in educational placement.

Plaintiffs argue that the closure of the D/HH program is a "significant change in the student's program" even though students remain in the same setting. Pls.' Mot. TRO 12 (quoting *N.D. v. Hawaii Dep't of Educ.*, 600 F.3d at 1116). They argue that the Center Site Program provided centralized services and supports that cannot be replicated at students' neighborhood schools. They argue that Deaf education is unique and cannot be analyzed like other disabilities. And finally, they argue that the cohort of Deaf peers at the Center Site Program was an integral part of students' placement.

Plaintiffs assert that, due to the centralized nature of the D/HH Center Site Program, students previously had daily access to a teacher of the deaf, received direct instruction in ASL, and had onsite technology support for their assistive devices.

By contrast, Plaintiffs allege that A.M-G. cannot "access her education with only an interpreter, as an interpreter cannot provide her with an immersive language environment." P.G. Decl. ¶ 19. Plaintiffs also allege that there will be insufficient audiologist support at neighborhood schools. P.G. Decl. ¶ 30. They allege that this will lead to frequent headaches for A.M-G., or an inability to use her cochlear implants. P.G. Decl. ¶ 30.

Similarly, Plaintiffs allege that K.B. is not receiving the necessary technology support. K.B. Mot. TRO 5. They also allege that meeting only one time a week with the Teacher of the Deaf is not sufficient to allow her to access her education. *Id.* Finally, they allege that K.B.'s academics and mental health are suffering without Deaf peers in her classes. *Id.*

By definition, Plaintiffs' IEPs outline the specific services and supports that are necessary for students to receive a FAPE. To the extent that these benefits of the D/HH Center Site Program are necessary, they are incorporated in their IEPs and remain in their new or amended IEPs. If Plaintiffs argue that students are not receiving the services guaranteed in their IEPs, that is better addressed in their claims for failure to provide a FAPE. Stay put requires only that the school district provide the services and placement as outlined in the IEP and the placement paperwork.

Plaintiffs argue that education at neighborhood schools without other Deaf students is fundamentally more restrictive, as it limits students' opportunities for direct communication. Pls.' Mot. TRO 13. For students who are deaf or hard of hearing, the IEP team must "consider the child's language and communication needs, opportunities for direct communications with peers and professional personnel in the child's language and communication mode, academic level, and full range of needs, including opportunities for direct instruction in the child's language and communication mode." 34 C.F.R. § 300.324. However, Plaintiffs have presented no evidence that students' communication needs were not considered. Facially, these needs are addressed in the IEPs.

For A.M-G., the IEP notes that she "uses an FM to help reduce the effects of distance and noise in the classroom. A.M-G. uses sign language to help make herself understood and may be necessary because of her language delays. A.M-G. also uses an American Sign Language interpreter to help her access information in her classes throughout the day." A.M-G. Moritz Decl. Ex. H at 6. This addresses A.M-G.'s communication needs and considers her language and communication mode and academic level.

For K.B., the IEP notes that K.B. "requires a teacher to use an FM in class so that she can hear in an environment with noise more easily. [K.B.] is also accessing transcription services to capture all the auditory verbal exchanges in the classroom. [K.B.] primarily uses auditory verbal communication and is easily understood by others. However, if there are technological breakdowns, use of sign language is helpful." K.B. Moritz Decl. Ex. H at 5. This addresses K.B.'s communication needs with peers and professional personnel. The additional accommodation of a full-time ASL interpreter is also designed to ensure that K.B.'s communication needs are met.

Plaintiffs argue that without other Deaf students, Plaintiffs are linguistically and culturally isolated. Pls.' Mot. TRO 5. Plaintiffs focus on the importance of the cohort of Deaf students who attended the Deaf/HH Center Site Program. *Id.* at 3. They note that Deaf students support each other in class. *Id.* They stress the mental health benefits of having pers with similar disabilities and modes of communication. *Id.* And they assert that a cohort of Deaf peers amongst hearing students helps Plaintiff students develop language skills. *Id.* The Court acknowledges these benefits but notes that a cohort of Deaf peers is not guaranteed in Plaintiffs' IEPs. And further, even if the Center Site Program were to reopen, there is no guarantee that other Deaf students in the district would choose to attend. In fact, one of the reasons cited for the closure of the program was diminished interest among students, many of whom, in high school, chose to return to their neighborhood schools. A.M-G. Moritz Decl. Ex. C. Neither the Court nor Defendants can compel other students to attend the D/HH program in order to give Plaintiff students the cohort of Deaf peers they experienced in previous years.

Finally, even if the D/HH program were the students' current educational placement, stay put would not require that the program reopen. SKPS contracts with WESD to provide services for D/HH students. A.M-G. Moritz Decl. Ex. B. The responsibility to provide identified students with a FAPE remains with SKPS, not with WESD. *Id.* WESD ran the D/HH program and made the decision to close the program. A.M-G. Moritz Decl. Ex. C. Neither SKPS nor this Court can compel WESD to reinstate the program.

"Courts have recognized, however, that because of changing circumstances the status quo cannot always be exactly replicated for the purposes of stay put." *Van Scoy ex rel. Van Scoy v. San Luis Coastal Unified Sch. Dist.*, 353 F. Supp. 2d 1083, 1086 (C.D. Cal. 2005). When a school closes or a student transfers districts, stay put requires that the substitute placement be as close as possible under the circumstances. *Ms. S. ex rel. G. v. Vashon Island Sch. Dist.*, 337 F.3d 1115, 1134 (9th Cir. 2003) (looking at school's responsibility when a student transfers between districts); *accord John M. v. Bd. of Educ. of Evanston Twp. High Sch. Dist. 202*, 502 F.3d 708, 715 (7th Cir. 2007) ("A child's interim educational regime must produce as closely as possible the overall educational experience enjoyed by the child under his previous IEP.").

Plaintiffs' current educational program is as close as possible under the circumstances. As in previous years, Plaintiffs spend at least 80% of their time in the general education classroom. Their IEPs provide for substantially similar specially designed instruction, services, and accommodations. The additional accommodation of an ASL interpreter for K.B. mimics her experience in the D/HH program when ASL interpreters were available for her Deaf peers. Plaintiffs' current placement in their neighborhood schools comports with the requirements of stay put.

## **CONCLUSION**

For the reasons set forth above, Plaintiffs' Motions for Temporary Restraining Order and Preliminary Injunction (Case No. 6:24-cv-1517-MC, ECF No. 2 and Care No. 6:24-cv-01575-MK, ECF No. 2) are DENIED.

IT IS SO ORDERED.

DATED this 22nd day of November, 2024.

/s/ Michael McShane
Michael McShane
United States District Judge